Houston and Others *v.* The Board, &c., of Clay Co., and Others.

fore, against public policy to permit such contracts to have binding force.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded. The petition for a rehearing is overruled.

*Charles Denby*, *James G. Jones*, and *James E. Blythe*, for the appellants.

*Asa Iglehart* and *Charles E. Marsh*, for the appellee.

---

HOUSTON and Others *v.* THE BOARD, &c., OF CLAY COUNTY and Others.

If township trustees, acting officially, exceed their authority, unintentionally, under a mistake of law, in which the other contracting party equally participates, with equal means of knowledge, and yet the parties contract, neither at the time looking to personal liability, the trustees will not become personally liable, nor will the township be liable.

Under the act of *May* 12, 1852, township trustees could not legally contract for the erection of a bridge in anticipation of a tax thereafter to be levied and collected by virtue of a vote of the township thereafter to be taken.

APPEAL from the *Morgan* Circuit Court.

PERKINS, J.—*William K. Houston* built a bridge across *Eel* river, in *Washington* township, *Clay* county, *Indiana*, and assigned a part of his claim for compensation therefor to *Shallum Thomas*. This suit was instituted by *Houston* and *Thomas* to recover pay for the bridge; and was against *The Board of Commissioners of Clay County*, *The Trustees of Washington Township*, and certain individuals. The complaint contained a paragraph alleging that the defendants were indebted to the

plaintiffs in so much money for work and labor done, materials furnished, &c.

A demurrer was erroneously sustained to this paragraph; because under it, the plaintiffs might have given in evidence a demand arising upon a fully executed written contract, legally made. The plaintiffs then amended their complaint, omitting all the defendants except *Washington* township and resting their suit upon the written contract under which the bridge was erected. The facts disclosed in this complaint showed that the plaintiffs were not injured by the previous erroneous ruling on the demurrer. *Crake* v. *Crake*, at this term.

The written instrument mentioned is as follows:

"Articles of agreement made and entered into this 8th day of *June*, A. D. 1853, by and between *Washington* township, of *Clay* county, *Indiana*, of the one part, and *William K. Houston*, of the same county and State, of the other part, as follows, to-wit:

"The said *William K. Houston* agrees, and binds himself, to furnish all timber, stone, dirt, plank, iron, nails, and materials of every kind whatever, of a good substantial character, necessary and proper for the construction and completion; and to construct and complete, in a good, substantial, durable, and workmanlike manner, on or before the 15th day of *November*, A. D. 1853, a bridge across *Eel* river, at the point near *Bowling Green*, in said county, where said *Houston* lately commenced the construction of a bridge, under a contract with the board of commissioners of the county of *Clay;* and make the necessary embankment with dirt, at the west end of said bridge, so that the declension from said end shall not be more than one foot in every ten feet of length; said bridge and embankment to be constructed, completed, and made according to the *plan* accompanying this instrument, marked

(B,) and the *specifications* also accompanying this instrument, marked (C,) both of which are endorsed and approved by the parties hereto; and for the performance hereof by said *Houston*, and as his surety, *Samuel Miles* of said county, binds himself, as is evidenced by his signature and seal hereto.

"The said *Washington Township, of Clay County,* binds itself to pay the estimated value of said bridge and embankments, to said *Houston,* or his order; the estimates to be made according to the usages and rules usually observed in making such estimates on public works, by *William J. Ball,* engineer of the county of *Vigo,* and State of *Indiana;* or if said *Ball* should be unable, or fail to make such estimates, then the same are to be made by some practical and competent engineer, who shall be mutually agreed upon for said purpose, by the parties hereto; the said estimates to be made by and from the said plan and specifications, and on an actual inspection of the work; and it is further agreed, by and between the parties hereto, that if, in the construction of said bridge and embankment, it shall be necessary, in order to the construction thereof in a good, durable, substantial, and workmanlike manner, that the said *Houston* furnish other materials, and do other work, not in said plan and specifications set forth; that estimates therefor shall be included in the estimates aforesaid, and shall be governed by the same terms, and rules, and usages, as the estimates aforesaid. Said bridge and embankment to be received by said township, and said estimates to be made on the completion of said bridge and embankment.

"The said *Washington Township, of Clay County,* binds itself to pay the said *Houston,* or his order, the estimate made as aforesaid, as follows, to-wit: 1,000 dollars, to be appropriated by the board of commissioners of the county of *Clay;* said sum including the 750 dollars, made subject to the order of said commissioners, on the completion of a bridge at said point, by the trustees of the *Wabash and Erie Canal;* and 250

dollars out of the treasury of said county; also, 1,000 dollars out of the treasury of said township. The said 2,000 dollars to be paid on the completion and reception of said bridge, or so soon as the same can be collected. The remainder of the estimates (if any) shall be paid by such township as soon as a tax can be levied and collected in 1854, by the trustees of said township; said last payment to bear interest from the completion of said bridge and embankment.

"This contract is upon this express condition, to-wit: that the "board of commissioners of the county of *Clay*" will make and confirm to "*Washington Township, of Clay County,*" the said donation of 1,000 dollars, for the purpose herein expressed. Witness our hands and seals, the day and year first above written.

> "W. K. HOUSTON, [SEAL]
> "SAMUEL MILES, [SEAL]
> "OLIVER CROMWELL, [SEAL ⎫
> "THOMAS SLOAN, [SEAL ⎬ Township Trustees."
> "JOHN RIZLEY, [SEAL ⎭

The accompanying exhibit reads as follows:

"F"

"*Ordered*, by the board, that on the examination of articles of agreement, made and entered this day, by and between *Washington Township, of Clay County*, and *W. K. Houston*, of the same county, for the construction of a bridge across *Eel* river, near *Bowling Green*, in this county, at the point where the said *Houston* lately commenced the construction of a bridge, under a contract with this board, together with the plan of said bridge marked (B,) and the specification thereof marked (C,) endorsed and approved by the parties; that this board approve said contract, and that the donation of 1,000 dollars, as therein set forth, be made and confirmed to said township for the purpose of confirming said contract.

"I certify, that the foregoing is a full and correct copy of an order on the commissioners' record of *Clay* county. Page 189, *June* 8th, 1853.    JOHN OSBORN, A. C. C.

"Pr. E. MILES, Dept.

### "G"

"BOWLING GREEN, *Sept.* 29, 1853.

"At a called session of the trustees of *Washington* township, for the purpose of examining and receiving the bridge erected over *Eel* river, near *Bowling Green*, A. H. L. *Baker* was duly sworn into office, as the successor of *John Risley*.

"And now the trustees proceed to examine said bridge; and find it in all things completed, according to the contract, heretofore entered into between said trustees and said *Houston;* and it is ordered that it be received and taken off the hands of said contractor; and that the clerk of said township be authorized and instructed, in conjunction with said *Houston*, to procure the services of *Wm. J. Ball*, of *Terre Haute*, if he can be had, and if not, then some other competent engineer, to estimate said work; and that a copy of this proceeding be certified immediately to the auditor of *Clay* county.    OLIVER CROMWELL, Pres.

"Attest, M. ELKIN.

### "H"

"*Estimate of the Bowling Green Bridge.*

| | | | |
|---|---|---|---|
| 471 Cub. yards excavation, | $0 | 20 | $94 20 |
| 1700 Cub. yards embankment, | | 12½ | 212 50 |
| 1054 Cub. yards stone protection, and filling in cribs, | 1 | 00 | 1054 00 |
| 2749 Cub. feet framed timber in bents, &c., | | 18 | 494 82 |
| 3652 Lineal feet round timber, | | 7 | 255 64 |
| 2869 Lineal framed timber in superstructure, | | 20 | 573 80 |
| 24283 Feet board measure, flooring, planking, bents, floor, beams, head beams, | | | |

Houston and Others *v.* The Board, &c., of Clay Co., and Others.

| | | | |
|---|---|---|---|
| hub boards, lateral braces, and all small sawed stuff, .......................... | 2 | 00 | 485 66 |
| 3222 Pounds wrought iron, ....................... | 12½ | | 402 75 |
| 400 Pounds spikes, ................................ | 10 | | 40 00 |
| Framing and putting up trustles for raising superstructure of bridge,... | | | 275 00 |
| Contingencies, say,........................... | | | 500 00 |
| | | | 4,388 37 |
| Work on brush for foundation, ......... | | | 50 00 |
| Total,....................................... | | | 4,438 37 |

"*December*, 1853. WM. J. BALL."

The statute, so far as need be set forth, under which the above contract is made, reads as follows:

"Sec. 1. The township trustees of any township, if the public convenience require it, shall cause bridges to be built over water courses in such township, after having caused surveys and estimates thereof to be made; and for this purpose, on a day designated, of which notice shall be given to the supervisors of such township, may call out all the persons liable to work on highways in such township, and require them to erect such bridge; and when such supervisors shall receive such notice, they shall forthwith notify such persons thereof.

"Sec. 2. But instead of such labor, such trustees may expend any money in the township treasury not otherwise appropriated, in the erection of such bridges; and after having obtained the consent of a majority of the voters of the township thereto, may assess a tax on all the real and personal property of such township, to erect such bridges; and for the purpose of obtaining such consent, such trustees shall cause the clerk of such township to give twenty days' notice

that a poll will be opened on a day mentioned, at one of the places of holding elections in such township, to be designated in such notice, when and where the qualified voters of such township may vote for or against a tax for the erection of such bridges, such election to be conducted by the officers of elections of such township, and in the manner in which elections in such townships are held; and if a majority of the votes polled at such elections are in favor of such tax, the same shall be assessed by such trustees, and collected by the treasurer, who for this purpose may procure from the tax duplicate of the county an authenticated transcript of the taxable property of such township, and such treasurer in collecting such tax shall have the same power, and be governed by the same regulations, provided by law for county treasurers and collectors in collecting the county revenue.

"Sec. 3.    When such tax is so collected, after having given thirty days' notice thereof, by posting up notices in three public places of such township, or by publication in a newspaper of such county, shall receive sealed proposals for the erection of such bridges; but such trustees shall require the contractor to give bond and surety for the due performance of his contract; and shall make such regulations in reference to payments, and kinds of bridges as to them shall seem proper.

"Sec. 4.    Such trustees shall receive and appropriate all donations for the erection and repair of bridges, and when any such bridge is of general importance to the county, such trustees may petition the board of commissioners of the county for an appropriation to erect such bridge, and if such board shall make such appropriation, the amount thereof shall be paid over to the treasurer of such township, who shall appropriate the same under the direction of such trustees."    1 R. S. p. 201.    See, as to its repeal, 1 G. & H. p. 202.

Upon the foregoing contract between *Washington* township

## MAY TERM, 1862. 403

Houston and Others *v.* The Board, &c., of Clay Co., and Others.

and *Houston,* construed with reference to the statute, we think the county of *Clay* was not primarily liable to *Houston* for the 1,000 dollars the county was to furnish, and that the special paragraphs in the complaint did not state facts justifying the joinder of the county as a defendant in this suit. If the county had really paid the money to the township, and discovery had been necessary; or if the county had refused to furnish the money to the township, so that, on any ground, it had been necessary for the plaintiffs to call for the equity powers of the Court, to reach the liability of the county, perhaps a case might have been made which would have been a proper one for the joinder of the county as a defendant.

We do not think the special paragraphs made a case in which the township trustees are personally liable, and, hence, not a case where they should have been parties in their individual capacities.

If they did not exceed their authority, as trustees, they certainly were not liable. And if they did, and did it innocently, under a mistake of law, in which *Houston* equally participated, with equal opportunities of knowledge, and they nevertheless contracted with *Houston,* and he with them in their official character, as trustees, neither, at the time, looking to personal liability, the trustees are not personally liable, nor is the township liable. See the cases cited in *Herod et al.* v. *Rodman,* 16 Ind. 241; Smith on Cont. by Raule, side page 251, note; *Smout* v. *Ilberry,* 10 M. & W. 1. Mr. *Story* says that where the want of authority is known to both parties at the time of the contract, and the contract is nevertheless made by and with the agent on account of the principal, the agent is not bound.

In *Ballou* v. *Talbot,* 16 Mass. 461, the Court held, that one who contracts professedly for another, without authority, does not render himself liable upon the contract, as a party to it; but that he may be liable to a special action on the

404    SUPREME COURT OF INDIANA.

Houston and Others *v.* The Board, &c., of Clay Co., and Others.

case. See Story on Agency, sections 264, 265, and notes, for the conflicting decisions on this latter point.

Looking now to the statute, we find that the township trustees had power to cause bridges to be erected.

1. By the labor of such as were liable to work on the highways.

2. By the expenditure of any money in the treasury.

3. By the proceeds of a tax levied pursuant to a vote of the township.

In the case at bar, a combination of the two latter modes was attempted. The trustees had power to make a contract for building a bridge, based upon funds in the treasury, and to use such funds in discharge of the contract; but the trustees had not power to bind the township to vote a tax, nor could the trustees, if the statute quoted was constitutional, levy one to be appropriated to the building of a bridge without such vote.

The powers and duties of trustees touching highways, are not governed by rules limiting action in raising money under the school law. But under that law, local taxation is permitted for the building of school houses. *The City, &c.* v. *Jenners,* 10 Ind. 70.

And we doubt, though we do not decide, whether the fact that the trustees are restrained from levying a tax for a bridge till the condition precedent of a vote therefor by the township is given, rendered the law unconstitutional, and the condition void.

This restriction, contained in the general law of the land, the plaintiffs were bound to take notice of, if it was valid. But the statute in question is now repealed. 1 G. & H. p. 202.

In this case, then, should the plaintiffs recover judgment for more than the amount that might be in the township treasury, they could not have execution upon it for such ex-

cess, nor could they obtain payment of it, except by means of funds raised in some mode now known to the law.

On the evidence given on the trial below, we think the finding of fact was erroneous. See *The Board, &c.* v. *Cokely,* 5 Ind. 164.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded.

*Miles & Wiltse,* and *Harrison & Majors,* for the appellants.
*C. C. Nave* and *M. M. Franklin,* for the appellees.